IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| CARLA J. HITE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-126-S-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

### <u>Introduction</u>

Currently pending before the Court for consideration is Petitioner Carla J. Hite's

("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security

benefits, filed March 17, 2008.  The Court has reviewed the Petition for Review and the Answer,

the parties' memorandums, and the administrative record (AR).  For the reasons that follow, the

Court will remand the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on December 28, 2004, alleging disability due to posterior disc protrusions,

**Memorandum Decision and Order - Page 1**

osteopath narrowing, bipolar disorder, possible ADD, and possible learning disabilities. (AR 73.)
Petitioner's application was denied initially and on reconsideration, and a request for a hearing
was timely filed.

Administrative Law Judge (ALJ) Larry B. Parker held a video hearing on May 15, 2007,
taking testimony from Petitioner and vocational expert Nelly Katsell. (AR 435-459.)  ALJ Parker
issued a decision finding Petitioner not disabled on July 13, 2007. (AR 13-20.)

Petitioner filed a timely appeal to the Appeals Council.  The Appeals Council admitted
additional evidence and on January 30, 2008, the Appeals Council denied Petitioner's request for
review, making the ALJ's decision the final decision of the Commissioner.  (AR 4-6.)  Petitioner
appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's
decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 49 years of age.  She has a GED, and her past
relevant work includes work as a laundry worker, recreation aid, sewing machine operator, food
assembler, packager, and cook.  She claims she became disabled on April 30, 2003.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a
claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined
whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had
not engaged in substantial gainful activity since April 30, 2003, her alleged onset date.

At step two, it must be determined whether claimant suffers from a severe impairment.
The ALJ found Petitioner's disc disease, bipolar disorder, and history of alcoholism "severe"
within the meaning of the Regulations.

**Memorandum Decision and Order - Page 2**

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found Petitioner was not able to perform her past relevant work.

Because the ALJ decided that the claimant demonstrated an inability to perform past relevant work, the burden shifted to the Commissioner to demonstrate at step five that the claimant retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.  At step five, the ALJ determined that the Petitioner was able to perform light work limited to nonpublic simple repetitive tasks.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national

economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.

**Memorandum Decision and Order - Page 4**

*Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful

consideration of subjective complaints but provides adequate reasons for rejecting them, the

ALJ's well-settled role as the judge of credibility will be upheld as based on substantial

evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**IV.**
**Discussion**

      Petitioner contends the ALJ erred at the third and fourth steps of the sequential evaluation

process.  First, Petitioner argues that the ALJ's finding at step three that Petitioner did not meet

the requirements of Listing 12.04 was in error, specifically because the ALJ failed to give proper

weight to Petitioner's treating physician, Dr. L. Mark Kimsey's, opinion.

      Next, Petitioner argues that the ALJ's step four determination was in error, because the

hypothetical provided to the vocational expert did not include all of the limitations supported by

the record, and specifically ignored her marked or extreme limitations in memory and

concentration, persistence, or pace, as well as her problems interacting with others.

      Finally, the Petitioner argues that a subsequent favorable decision by the Social Security

Commissioner requires remand of this case.  The Court will address each of Petitioner's

arguments in turn.

**A.**      **Petitioner's Credibility**

      The ALJ found that "the claimant's allegations regarding the nature, severity, and

functionally limiting effects of her impairments and/or symptoms are not entirely credible." In

support of this finding, the ALJ cited Petitioner's daily activities including caring for a brother

and father, work activity, and lack of support in the record, specifically: "physical examinations

are generally benign, and mental status examinations reveal that the claimant's condition despite

alcohol abuse, is controlled, ongoing clinical pathology minimal." (AR 18.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony.)  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 679.  General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider:  location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of

**Memorandum Decision and Order - Page 6**

medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p.

As noted above, the ALJ discredited Petitioner based on Petitioner's daily activities, indicating that they "were admittedly full and included caring for a dependent father and psychiatrically impaired brother." (AR 6.)  However, even if Petitioner's daily activities were full and she was able to provide care for adult family members,  this is not grounds to dismiss Petitioner's claims entirely.  As the Ninth Circuit has consistently held, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) *citing Cooper v. Bowen* (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits), *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

Further, the ALJ mischaracterized the evidence as a whole in reaching his conclusion that Petitioner's daily activities contradict her ability to work.  For example, the Petitioner testified at the hearing that she has good days and bad days with respect to her bipolar disorder symptoms. On a good day, Petitioner might go to her daughter's house and help her run errands, frequently staying in the car to watch her grandchildren. (AR 450.)  On an average day, she noted that she would do some intermittent house cleaning and laundry.  (AR 449.) However, Petitioner testified that she had bad days twenty out of thirty days a month, and on a bad day, her activities are severely limited.  She stated: "I'll probably be achy hurting, depressed, a headache coming on probably... a lot of times I'll just go back to bed and just lay there for a long time..." (AR 450-

451.)  This testimony is supported by the comment in her application that: "When I am depressed sometimes I let myself go and don't shower or get dressed for three or four days." (AR 84.)

Petitioner further discussed how her bipolar disorder symptoms affect her socially.  She noted that she avoids social situations because she feels insecure and the resulting anxiety can result in panic attacks. (AR 87.)   She also testified that she avoids shopping on weekends or at night because she is afraid she will run into someone she knows. (AR 90, 447-448.) Instead, she interacts mainly with family and will sometimes shop at 3 a.m. to avoid interaction with others. (AR 448.) Thus, despite the fact that the ALJ is correct that Petitioner admittedly is capable of performing household chores on her good or average days, the ALJ failed to discuss the record as a whole with respect to her limitations and thereby erred in his determination that Petitioner is not credible based on her daily activities.

The ALJ further discredited Petitioner's testimony based on Petitioner having a part time job beginning around August 2005, after the Social Security Administration denied her claim on May 23, 2005.  (AR 130.)  In reaching this conclusion, however, the ALJ ignored evidence that Petitioner had difficulties performing the job and ultimately was fired after only five months in the job.  (AR 391.) Dr. Kimsey's treatment note of August 8, 2005, reflects that Petitioner obtained a job doing screen printing and embroidery, but also that she had a hard time being around people. (AR 395.) The note in October 2005 also reflects that Petitioner felt stressed by her job and was close to quitting due to the stress. (AR 393.)  This, combined with her past history of work related problems, including anger outbursts and other difficulties dealing with co-workers, paints a very different picture of Petitioner's ability to function in the workplace that is not addressed in the ALJ's decision.

**Memorandum Decision and Order - Page 8**

Petitioner wrote in her application: "I think people are always talking about me, causing stress to build up, I become so overwhelmed that I have to quit or get medication.  I've been fired from several jobs for not being able to perform the duties and I have anger outbursts." (AR 73.) She further acknowledged that she had been fired because of problems getting along with other people, specifically co-workers and bosses, as well as her memory problems which the ALJ does not discuss. (AR 88, 454.)  The number of jobs Petitioner had between 1992 and 2003 is also telling.  She held seven positions with the longest lasting around two and one half years. (AR 74.)  Because the ALJ did not consider the record as a whole, including evidence that contradicts his conclusion, he erred in finding Petitioner not credible because she worked part time after her alleged onset date.

Finally, the ALJ found that the record does not support Petitioner's contentions regarding her limitations. Specifically, the ALJ concluded,  without further explanation, that Petitioner's "mental status examinations reveal that the claimant's condition, despite alcohol abuse, is controlled, ongoing clinical pathology minimal." (AR 18.) The Court disagrees. The evidence demonstrates that Petitioner suffers from bipolar disorder and that her physicians had difficulty managing her biopolar disorder with medication.

Petitioner began seeing Dr. Kimsey in July 2004.  Dr. Kimsey confirmed Petitioner's bipolar diagnosis. (AR 225-226.) His treatment notes, instead of being inconsistent with his opinion, as the ALJ found, reflect both manic and depressed cycles with fluctuating severity, irritability, anxiety, and obsessive and impulsive behaviors. (AR 223, 222, 219, 218, 242, 241, 238, 239, 395, 393, 392, 388, 387, 386.)   Additionally, Dr. Kimsey's treatment notes provide a detailed record of the numerous changes in Petitioner's medications that were required due to

Petitioner's side effects and her overall dissatisfaction with some of the medications. They also document the numerous times she voluntarily stopped taking her medications. (AR 221, 218, 242, 241, 395, 394, 393, 392, 391, 389, 388, 384, 381.) Dr. Kimsey's conclusions also are supported by the evidence of other treating physicians and counselors, including Dr. Michele Boyer, Dr. Barney Greenspan, and Jan Van Slyke.

Petitioner saw Michele Boyer, M.D., between January and May of 2004.  Dr. Boyer noted that Petitioner had a history of mental problems.  Dr. Boyer confirmed the bipolar disorder diagnosis, giving the Petitioner a global assessment of functioning ("GAF") score of 55 and prescribing Depakote for Petitioner. (AR 201-203.)  Although Dr. Boyer's treatment notes reflect that Petitioner's mood swings became more stable, there is evidence that her problems with concentration, attention and focus had not resolved even with the addition of Strattera for control.  (AR 198.)  Dr. Boyer also noted that Petitioner had trouble with comprehension, indicating she had to repeat things for Petitioner to understand.[1] (AR 200.)

Petitioner saw Dr. Barney Greenspan, Ph.D., in July and August of 2004.  Dr. Greenspan diagnosed Petitioner with severe bipolar disorder without psychotic features, giving her a GAF score of 50 or serious symptoms. (AR 217.) He further noted that, "given her fragile ego structure and past suicidal attempts and psychiatric hospitalizations (even though 20 years ago) she will need to be monitored carefully." (AR 217.)  His note of August 3, 2004, stated that Petitioner reported that "her memory has been 'terrible' recently and that she has not been thinking clearly.  She sometimes finds herself driving on the wrong side of the road." (AR 210.)

---

[1] Additionally, in May 2004, Dr. Boyer noted that Petitioner asked about applying for social security benefits and Dr. Boyer explained what Petitioner needed to do three times. Petitioner walked away stating she was confused and did not understand Dr. Boyer. (AR 197.)

**Memorandum Decision and Order - Page 10**

The note also stated she has great difficulty with sequential ordering and concentrating. (AR 210.)

Dr. Greenspan's notes in August of 2004 also reflect problems Petitioner suffered with controlling her medication and her transition between manic and depressive cycles, stating: "Carla has recently been feeling more hyper and somewhat manic, worried that these feelings are escalating," and "Carla remains restless and fidgety.  This may be a reaction to the increase of Lamictal to 200mg which she began August 17th.  In the meantime it seems as if compulsive behaviors... are on the increase as a way to contain anxieties." (AR 205, 206.)  Dr. Greenspan's observations contradict the ALJ's conclusion that Petitioner had no significant mental status abnormalities and that her condition was controlled.  Additionally, the ALJ failed to  address or discount Dr. Greenspan's conclusions in the ALJ's opinion.  This failure to address substantial evidence demonstrates that the ALJ did not consider the record as a whole, and therefore his decision is not based on substantial evidence. *See Jones v. Shalala*, 65 F.3d 102 (8th Cir. 1995) (where the ALJ's decision does not mention important material evidence of lay witnesses or medical experts, the court can assume the evidence was not considered and can remand for further consideration).

Similarly, Jan Van Slyke's opinion dated March 21, 2007,  also contradicts the ALJ's opinion.  Mr. Van Slyke is a licensed professional counselor and a licensed marriage and family therapist who saw Petitioner beginning February 28,  2006.  (AR 396.) His opinion states: "Counseling and medication management assist Ms. Hite in managing her psychological symptoms although do not resolve her Depression and Panic Disorder.  Her mental illness is chronic." (AR 396.)  He further observed that Petitioner has become "socially isolated beyond contact with her immediate family" and that, when Petitioner "attempts to work her mental

health decompensates resulting in increased severity of depression symptoms which inevitable results in her being terminated or having to resign from her job." (AR 396.)[2]  The treatment notes from Mr. Van Slyke are not included in the record, however.

Petitioner also was seen by David R. Starr, Ph.D., at the request of the Disability Determination Services in connection with Petitioner's application for disability benefits.  The ALJ gave Dr. Star's conclusions controlling weight in his determination that Petitioner was not disabled. The ALJ also contended that Dr Starr's opinions are contrary to the opinions of Petitioner's treating physicians.  However, Dr. Starr's opinion does conclude that Petitioner has bipolar disorder with a GAF score of 60, or moderate difficulties.  He also noted that she had a lengthy history of major mood disorder and some difficulty concentrating and paying attention. (AR 237.)  Specifically he noted that she recalled just one of three unrelated words after a five-minute delay, and that she completed the serial 7 tasks very slowly.  He wrote: "there were numerous lengthy latencies of responses and she tended to forget where she was. She persisted, however, and completed the task despite committing nine errors all together." (AR 236.)

Thus, because the ALJ failed to consider the record as a whole and mischaracterized the evidence regarding Petitioner's bipolar disorder, his finding that Petitioner is not credible is not based on substantial evidence and constitutes legal error.

## B.    Medical Opinions

Petitioner argues that the ALJ erred by discrediting Dr. Kimsey's and Mr. Van Slyke's opinions.  As this argument is the basis for Petitioner's claim that the ALJ erred by not finding Petitioner's ailments equal to a listing at step three, the Court will address the ALJ's treatment of

_____

    [2] The ALJ also discredited Mr. Van Slyke's opinion.  The Court will address this argument later.

Dr. Kimsey's and Mr. Van Slyke's opinions first.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981).

Even when a treating or examining physician's opinion is contradicted, that opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). To satisfy this requirement, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation therefore, and making findings. In other words, the ALJ must do more than offer his conclusions - he must explain why his interpretations rather than the doctors are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). However, an ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Kirk v. Astrue*, Slip Copy 2008 WL 2595178 (W.D. Was. 2008) *citing Batson v. Commissioner of Social Security*

*Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).  Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As noted above, Petitioner argues that the ALJ erred by discrediting the opinion of Dr. Kimsey, Petitioner's treating psychiatrist beginning in July 2004 continuing until March 2007. The opinion at issue was a mental status review of Ms. Hite in August of 2005, which found that Petitioner would have marked difficulties in the ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods of time.  Dr. Kimsey further opined that Petitioner would have extreme limitations working in coordination with, or in proximity to other co-workers, as well as marked difficulties getting along with others without exhibiting behavioral extremes.  Finally, Dr. Kimsey concluded that Petitioner would have marked difficulties completing a normal workday without interruptions from psychologically based symptoms. (AR 400-405.)

The ALJ discredited Dr. Kimsey's opinion on the basis that "the evidence of record as a whole, including that from Dr. Kimsey, reflects good control of the Petitioner's impairments with treatment and medication, no sustained mental status abnormalities of significance, myriad daily activities, including caring for a brother and father, no hospitalizations or emergency care, and work activity during the period at issue." (AR 6.)  The ALJ also noted that Dr. Kimsey did

**Memorandum Decision and Order - Page 14**

not set forth an opinion absent the effects of alcohol abuse.  However, the Court finds that the ALJ's conclusions were not based on substantial evidence and therefore require remand.

First, the Court finds that remand is warranted because the ALJ did not state what evidence in the record he was relying upon in making his conclusory rejection of Dr. Kimsey's opinion. Without more detail or further explanation of the basis of the ALJ's conclusion that Dr. Kimsey was wrong, the Court is left to speculate and cannot adequately evaluate whether to find it was based on substantial evidence.  Thus, the Court finds that the conclusory statements made by the ALJ do not rise to the level required by *Reddick v. Chater*, which requires the ALJ to set forth the conflicting evidence and explain why his interpretation is valid.  Despite this flaw in the ALJ's opinion, the Court will, address the reasons the ALJ gave for rejecting Dr. Kimsey's opinion.

As discussed above with respect to Petitioner's credibility, the ALJ mischaracterized the evidence of record in reaching his conclusion that it reflects "good control of the claimant's impairments with treatment and medication, no sustained mental status abnormalities of significance." (AR 18.) The longitudinal evidence of record consistently contradicts this conclusion, and, instead, demonstrates that Petitioner had chronic bipolar disorder and that her treating physicians had problems controlling the disorder and her medications.  Additionally, as discussed above, the ALJ did not consider the record as a whole with respect to Petitioner's daily activities.  Therefore, rejecting Dr. Kimsey's opinion on that basis is also error.

The ALJ also rejected Dr. Kimsey's opinion because it was not set forth absent the effects of alcohol abuse. (AR 18.)  This statement is false.  When asked: "What impact, if any, does the use of alcohol or other substances have in arriving at your assessment?", Dr. Kimsey responded: "none."  This is not a legitimate reason to reject Dr. Kimsey's opinion.  (AR 402.)

Thus, the ALJ erred by giving Dr. Kimsey's opinion no weight, particularly when it is supported by the opinions of Petitioner's other treating physicians and even if it did not meet the test for controlling weight, where the treating physician's opinion is contradicted by substantial evidence, it is "still entitled to deference" and in many cases may be entitled to the greatest weight even if it does not meet the test for controlling weight. *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007) *citing* S.S.R. 96-2. Clearly the ALJ erred by giving Dr. Kimsey's opinion no weight.

The ALJ also rejected Jan Van Slyke's opinion as contrary to the overwhelming weight of the evidence, contrary to the claimant's significant daily activities, contrary to the objective evidence from acceptable and treating medical sources, concerning matters outside the area of expertise of the opiner, conclusory, and unsupported by concomitant treatment notes." (AR 18.)

The Court previously addressed several of the ALJ's conclusions, including the weight of the evidence and Petitioner's daily activities, and therefore will not discuss them again here. Additionally, as discussed above with respect to Dr. Kimsey's opinion, the ALJ did not identify or explain the evidentiary basis supporting his rejection of Mr. Van Slyke's opinion. Thus, similarly to Dr. Kimsey's opinion, the Court is forced to speculate with respect to the evidence that supports the ALJ's conclusory statements. Despite this flaw, the Court will address what it presumes to be the ALJ's reasoning.

The ALJ's statement implies that he found Mr. Van Slyke's opinion to be insufficient because he is not a licensed medical doctor. However, the ALJ is not free to disregard the opinions of mental health providers simply because they are not medical doctors. *Duncan v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2004) *citing* 20 C.F.R. § 404.1513(a); *see also Bergfeld v. Barnhart*, 361 F.Supp.2d 1102 (D. Az. 2005). Without any further explanation by the ALJ as to

**Memorandum Decision and Order - Page 16**

why Mr. Van Slyke's opinion would be inappropriate, rejection of Mr. Van Slyke's opinion on this basis alone is invalid.

Additionally, the ALJ's argument that Mr. Van Slyke's opinion is outside of his expertise is invalid with respect to findings regarding Petitioner's mental health. Instead, the Court finds that a treating counselor's opinion could be the most probative with respect to his or her patient's mental health. Thus, the ALJ's rejection of Mr. Van Slyke's opinion with respect to Petitioner's mental health was not based on substantial evidence and was legal error.

**C.    Listing Determination**

The ALJ found that Petitioner's bipolar disorder did not meet the listing criteria for affective disorders under Listing 12.04. Petitioner contests this conclusion was erroneous, arguing that Dr. Kimsey's report demonstrates that she satisfies both the Part A and Part B criteria contained in Listing 12.04 and independently the Part C criteria.

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant has the burden of producing medical evidence that establishes all of the requisite medical findings. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987).

The ALJ found that Petitioner did not meet the Part B or Part C requirements because she had moderate, as opposed to marked, restriction in the activities of daily living, social functioning, concentration, persistence or pace, and that the claimant has experienced one or two episodes of decompensation. (AR 15.) Petitioner argues that this conclusion was error because the ALJ failed to give adequate weight to the report submitted by Dr. Kimsey, her treating psychiatrist. Having already found that the ALJ erred in his rejection of Dr. Kimsey's opinion,

**Memorandum Decision and Order - Page 17**

the Court finds that the ALJ's Step Three analysis that Petitioner does not meet the listing

requirement based on his rejection of Dr. Kimsey's opinion was also legal error.[3]

**D.     Residual Functional Capacity to Do Past Relevant Work and Hypothetical Posed to Vocational Expert**

Because the ALJ discredited Petitioner's testimony and rejected Dr. Kimsey's opinion,

Petitioner argues the hypothetical relied upon by the ALJ in forming his opinion did not include

all of Petitioner's limitations that were supported by the record.  Petitioner therefore asserts that

the ALJ's finding that she could perform nonpublic, simple repetitive tasks was in error.

At the fourth step in the sequential process, the ALJ determines whether the impairment

prevents the claimant from performing work which the claimant performed in the past, *i.e.*,

whether the claimant has sufficient residual functional capacity to tolerate the demands of any

past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual

functional capacity is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a).  An

ALJ considers all relevant evidence in the record when making this determination.  *Id.*

Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported

by substantial evidence in his hypothetical question to the vocational expert, but may exclude

unsupported limitations.  *Bayliss*, 427 F.3d at 1217.  In analyzing mental impairments to

determine the degree of functional limitations, the regulations require that the ALJ include a

finding as to the degree of limitation in each of the four mental functional areas 1) activities of

daily living, 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of

---

[3] The Court does not find that Petitioner meets the listing requirements.  Instead, the Court finds that the ALJ's reasoning was error and the case must be remanded.

decompensation.  20 C.F.R. 404.1520(a).

Although the ALJ's decision is not clear, the ALJ appears to have adopted the non-exertional limitations he posed to the vocational expert, including mild restrictions of activities of daily living, mild as to social functioning, moderate as to difficulties in maintaining concentration, persistence, and pace, one to two episodes of decompensation, and markedly limited contact with the public and completing a normal workday or workweek. (AR 456-457.) In response to this hypothetical, the vocational expert identified garment folder, small products assembler and bagger as jobs Petitioner would be capable of performing. (AR 457, AR 19.)  The vocational expert also opined that these positions would accommodate a person with a GAF score of 60, or with moderate restrictions. (AR 457.)

In providing these limitations, the ALJ erred by disregarding Petitioner's testimony, rejecting Petitioner's treating physician, and ignoring Dr. Greenspan's opinion.

As the Ninth Circuit has stated, the hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant supported by the record, including, for example, pain and an inability to lift certain weights.  If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the vocational expert's opinion has no evidentiary support.  *Emabrey v. Bowen,* 849 F.2d 418 (9th Cir. 1988).

Here, the vocational expert testified that, if an employee missed work three or more days per month, she would not be able to maintain any of the jobs listed.  Additionally, the vocational expert opined that, if an individual is off task 20 percent of the time, she would not be able to sustain the position of employment because she would not be completing tasks.  (AR 458.)  But, because the ALJ found Petitioner's complaints not credible, the ALJ rejected Petitioner's

characterization of her limitations.  Given, however, that the ALJ's credibility determination was in error and the rejection of Dr. Kimsey's and Mr. Van Slyke's opinions were in error, the ALJ's residual functional capacity finding was also erroneous.

The Ninth Circuit recently noted how the failure to include all of the limitations that are supported by substantial evidence in the record can undermine the efficacy of a hypothetical question:

> As the Commissioner correctly recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.  *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir.2001).  Conversely, an ALJ is not free to disregard properly supported limitations.  The ALJ's failure to account for the testimony of Robbins and his son calls into question the validity of his determination of Robbins's limitations and RFC before September 1998.  Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate.  *Id.*  Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ.  Accordingly, the ALJ's step five determination is unsupported by substantial evidence.  *See id.* at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

*Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th. Cir. 2006).

As in *Robbins*, the Commissioner's position regarding the propriety of the hypothetical question rests on the premise that Petitioner's testimony regarding her limitations due to her bipolar disorder were not credible.  However, the ALJ did not follow the proper legal standards for rejecting Petitioner's characterization of her limitations, in addition to rejecting her treating physicians' conclusions.  As such, the hypothetical question, which was to include all of Petitioner's limitations that were supported by substantial evidence, is an evidentiary and legal

nullity.

**E.      The Subsequent Favorable Decision by the Social Security Administration**

Petitioner argues that the subsequent favorable decision by the social security administration also necessitates remand.  Petitioner filed a second application for disability benefits after the first denial on what Petitioner claims are the "precise issues" in this case.  Pet. Brief, Docket No., p. 11.  The Social Security Administration decided that Petitioner was entitled to benefits in January of 2008.  However, the notice of award does not indicate the date that Petitioner was found disabled or contain any further details regarding the decision.

Sentence six of 42 U.S.C. 405(g) states:

> The court may, on motion of the Commissioner of Social security, made for good cause shown before the Commissioner filed the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....

The sentence six standard also is applied to requests by a claimant seeking a remand based on new evidence.  The Ninth Circuit has held that good cause is shown where the new evidence was not previously available. *Wainwright* v. *Secretary of Health and Human Services*, 939 F.2d 680, 683 (9th Cir. 1991). With respect to the materiality requirement, the Ninth Circuit has held that new evidence is material if it "'bears directly and substantially on the matter in dispute,'" and "'if there is a reasonable possibility that the new evidence would have changed the outcome of the ...  determination.'" *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001) *citing Booz v. Secretary of Health and Human Services*, 734 F.2d 1378 (9th Cir. 1984).  Although *Bruton*

established that a subsequent favorable decision could warrant remand under sentence six, the

Court found that remand was not warranted in Mr. Bruton's case because his second application

for disability benefits involved different medical evidence, a different time period and a different

age classification, and therefore was not inconsistent with the ALJ's denial of Bruton's first

application. *Bruton*, 268 F.3d at 827.[4]

Petitioner argues that, under 42 U.S.C. § 423, she must have been found disabled

sometime in July of 2007, because the social security rules indicate that a claimant becomes

eligible for payment after her five month waiting period has passed. 42 U.S.C. § 423.  Response

to Sur-Reply, Docket No. 18, p. 4. Thus, Petitioner argues that, because she became eligible for

payment in January of 2008, the disability onset date must have been in July of 2007, the same

month the ALJ denied her first application for benefits. *Id*.  The case law and regulation support

this conclusion; however, as noted in Bloch on Social Security, most claimants receive a lump

sum payment of past due benefits covering the period from the first month of eligibility to the

month when the first regular payment is made, or the five month waiting period.  Bloch on

Social Security, §2.20, 2009. Based on the letter sent to Petitioner, she did receive a lump sum

payment in July of 2008 for benefits beginning in January of 2008, which would indicate that the

Commissioner may have determined that her disability onset date was January of 2008.

Because the Court has no conclusive evidence as to the disability onset date, however, the Court

---

[4] *Bruton* is the only reported case in the Ninth Circuit dealing with facts that are similar
to the case at hand.  However, the District Court of West Virginia has addressed the issue of
whether a subsequent grant of benefits can constitute new and material evidence and has held
that an award based on an onset date coming in immediate or close proximity to an earlier denial
of benefits should be scrutinized further to determine whether the subsequent grant of benefits
should alter the initial denial of the claim.  *Bradley v. Barnhart*, 463 F. Supp. 2d 577 (S.D.W.
Va. 2006); *Reichard v. Barnhart*, 285 F.Supp.2d 728 (S.D. W.Va. 2003).

cannot determine from the record Petitioner's disability onset date.  Therefore, the Court does

not have enough information to decide whether the evidence included in the subsequent

application is material[5] to the first disability determination and this case will not be remanded

under sentence six.[6]

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision

is not supported by substantial evidence and is the product of legal error.  Therefore, the

Commissioner's decision finding that the Petitioner is not disabled within the meaning of the

Social Security Act will be remanded.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is**

**hereby ORDERED that**:

1)        Plaintiff's Petition for Review (Docket No. 1) is **GRANTED**.

2)        This action shall be **REMANDED** to the Commissioner for further proceedings

---

[5] It is clear that the good cause element under *Wainwright* is met because the subsequent
favorable decision issued in July of 2008 was not available prior to the Appeals Council's
decision not to review the case on January 30, 2008. *Wainwright*, 939 F.2d at 683.

[6] Petitioner also argues that the Commissioner erred by not following the regulations
established in the Social Security Administration's HALLEX, Hearings, Appeals, and Litigation
Law Manual, specifically I-5-3-17, and this is sufficient to warrant remand. Response to Sur-
Reply, Docket No. 18, p.3.  Based on the title of this regulation: "Instructions for Processing
Subsequent Disability Claims while A Prior Claim is Pending Review At the Appeals Council,"
this regulation would apply in this case only if Petitioner's subsequent application was filed prior
to the date of the Appeal Council's denial of Petitioners Request for Review.  Having no
knowledge of when Petitioner's subsequent disability claim was filed, the Court does not have
enough evidence at this time to determine whether this regulation has been violated and therefore
will not address the argument further herein.

consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand" consistent with 42

U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: March 26, 2009

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge